1  Irving L. Berg (SBN 36273)
   THE BERG LAW GROUP
2  145 Town Center, PMB 493
   Corte Madera, California 94925
3  (415) 924-0742
   (415) 891-8208 (Facsimile)
4
   O. Randolph Bragg
5  HORWITZ, HORWITZ & ASSOC.
   25 E. Washington St, Suite 900
6  Chicago, Illinois 60602
   (312) 372-8822
7  (312) 372-1673 (Facsimile)

8  ATTORNEYS FOR PLAINTIFF

9

10                 UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13

14  RITA CAMACHO, on behalf of herself and      Case No.: C 04- 0478 CRB
    all others similarly situated,
15                                              **DECLARATION OF IRVING L. BERG IN**
                      Plaintiff,                **SUPPORT OF ATTORNEY'S FEES AND**
16  v.                                          **COSTS FOR CLASS REPRESENTATION**

17  BRIDGEPORT FINANCIAL, INC., a               **Date:**   January 5, 2007
    California Corporation, and CHRISTINA       **Time:**   10:00 a.m.
18  HARBRIDGE, RAY LEWIS, individuals,          **Place:**  450 Golden Gate Avenue, Courtroom 8,
                                                           19th Floor, San Francisco, CA
19                    Defendants.               **Judge:**  Honorable Charles R. Breyer

20  _____/

21       I, Irving Berg, declare I am one of the attorneys who represented the class in this case and,

22  as provided by the laws of the United States, 28 U.S.C. § 1746, declare that the following is true

23  and correct to the best of my knowledge.

24                        **I.  INTRODUCTION**

25       I have represented consumers with financial problems since 1965 in the bankruptcy court,

26  and state and federal courts.  By its nature, a consumer bankruptcy practice requires an attorney to

27  be familiar with consumer protection laws.

28

1  Many of my bankruptcy clients have been hounded by debt collectors and few are aware of

2  their rights in dealing with debt collectors.

3  My client, Rita Rae Camacho, was deeply in debt when I filed a bankruptcy petition on her

4  behalf in this district, on October 28, 2003 (BK #03-33150).  She had been unable to obtain full-

5  time employment in her chosen career as a behavior therapist, and consequently was unable to pay

6  her bills.

7  In representing Ms. Camacho, the collection letter from Bridgeport was identified as

8  violating the FDCPA by its unlawful requirement that a dispute be registered in writing.  We

9  discussed legal remedies available to consumers to seek redress for violations of collection laws.

10  We spoke about the class action as an effective legal procedure for advising consumers that they

11  had enforceable rights against debt collectors.

12  Additionally, we discussed the allowance of monetary damages to her as a class

13  representative and damages to the class.  It was uncertain whether Bridgeport had a net worth to

14  pay significant class damages.  We believed notice to the class of their rights under the FDCPA

15  was a worthwhile objective of the class action.  That was a benefit worth pursuing.

16  Ms. Camacho is a socially conscious person, and consented to filing a class action.  On

17  February 4, 2004, a class action was filed.  On August 25, 2006, a preliminary class settlement

18  agreement was approved by the court.  Shortly thereafter, almost 7,000 consumers who had

19  received collection letters from Bridgeport were notified of the settlement of the case and the

20  alleged wrongdoing of Bridgeport.  The class learned that Bridgeport had agreed to settle the case

21  by paying Ms. Camacho $1,000, as class representative and $341.50 to a community service

22  organization, and the attorneys who represented the class attorney's fees and costs of

23  approximately $100,000.  As Ms. Camacho had hoped, the class learned it had rights against

24  errant debt collectors.

25  This honorable court, on November 17, 2006, approved the Settlement as fair, adequate,

26  and reasonable.

27  ## II.  PLAINTIFF ACHIEVED SUCCESS
   ## ON THE MERITS OF THE LITIGATION.

28

Before this court and the Ninth Circuit, Plaintiff was successful in establishing that the plain language of 15 U.S.C. § 1692g(a)(3) did not require a consumer to register a dispute in writing.  Defendants were defeated in their ill-conceived attack on the plain language of the statute whose application was rational and well-considered by congress.

Plaintiff was successful in debunking Defendants' use of *Graziano v. Harrison*, and dicta in *Mahan v. Credit Bureau*, to attack the plain language of 15 U.S.C. § 1692g(a)(3).  As the Ninth Circuit court stated in affirming this court's decision:

> The district court correctly denied Bridgeport Financial's motion to dismiss.  The plain language of *subsection (a)(3)* indicates that disputes need not be made in writing, and the plain meaning is neither absurd in its results nor contrary to legislative intent.  Thus, there is no writing requirement implicit in § 1692g(a)(3).  Bridgeport Financial's collection notice violated § 1692g insofar as it stated that disputes must be made in writing.  (*Camacho v. Bridgeport*, 430 F.3d 1078, 1082 (9th Cir. 2005)

The class notice to almost 7000 consumers informed them that they had enforceable rights against debt collectors such as Bridgeport, who sent the offensive letter altering the rights of the class members.  Advising the class of their rights and the sanctions imposed on those who violated the collection law was a class benefit.

Plaintiff's success in this case has already been cited in the five district court cases, in consumer law publications, and debt collector trade magazines.  The decision will induce compliance by debt collectors.

By way of monetary success, the Plaintiff has received the statutory maximum of $1,000 under 15 U.S.C. 1692(k)(a)(2)(B), and a *cy pres* award to a community service organization of $341.50 has been made in lieu of class damages.

### III.  PLAINTIFF WAS FORCED TO DEFEND A MULTIPLICITY OF MOTIONS BY DEFENDANTS.

Plaintiff defended against defense motions having little merit, but requiring extensive legal research and drafting of memoranda:

(1)     Defendants' 12(b)(6) motion (denied);

1     (2)     Defendants' objection to amendment of the complaint (denied);

2     (3)     Defendants' motion for an interlocutory appeal (granted).

3     This case, when filed, was expected to be uneventful litigation.  The case law favored

4 Plaintiff. Uneventful litigation was not to be.

5     Though Bridgeport was a small collection agency, the defense appeared to be well-

6 financed and the  litigation became  fierce.  The defense opened with a 12(b)(6) motion that, from

7 an impartial perspective, lacked merit.  It seemed the defense was calculated to wear Plaintiff's

8 counsel down, or Defendants were operating to force an insignificant settlement or bent on

9 establishing a decision contrary to existing law.

10     This was important litigation. Your applicant was committed to succeeding in supporting

11 the existing law, particularly since he has been successful in the case of *Sanchez v. Weiss*.[1]

12 Because of the aggressiveness of the defense and other time commitments of your declarant,

13 Plaintiff chose as co-counsel O. Randolph Bragg, a nationally recognized attorney with Horwitz,

14 Horwitz, & Associates in Chicago, Illinois.  Together, we dealt with the aggressive attacks of

15 Murphy, Pearson, Bradley & Feeney, and the litigation counsel assigned to this case, June

16 Coleman and Mark Ellis.

17     At this early juncture, we moved to amend the Complaint to name Christina Harbridge, the

18 party believed to direct the collection action of the company, and Ray Lewis, the party who signed

19 the letter for defendant.  Stipulation to amendment at this stage usually is perfunctory.  However,

20 defense counsel vigorously opposed the motion, consuming precious time.  The amendment was

21 allowed by the court.

22     The Defendants' 12(b)(6) motion trying to support the writing requirement was vigorously

23 fought, requiring substantial time in legal research and drafting of pleadings.  The Court denied

24 the 12(b)(6) motion, but allowed an interlocutory appeal.  Plaintiff fought the interlocutory appeal,

25 as it would be costly for representation on the appeal, i.e., drive up the litigation costs.  Also, the

26

27     [1] Your applicant was trial and appellate attorney from a bankruptcy court decision to the
District Court in *Sanchez v. Weiss*, 173 F. Supp. 2d 1029 (N.D. Cal. 2001).

28
DECLARATION OF IRVING L. BERG          CAMACHO V. BRIDGEPORT FINANCIAL, *et al.*
IN SUPPORT OFATTORNEY'S FEES AND          C 04- 0478 CRB
COSTS FOR CLASS REPRESENTATION       4

appeal would delay resolution of the case, not only for both the Plaintiff and the class, but also for the attorneys, who were unpaid and would not be paid until the case was resolved.

To buttress our position on appeal and relieve time commitments of your declarant and Mr. Bragg, Plaintiff appointed Richard Rubin as attorney for the appeal.

### IV.  DEFENDANTS' OBFUSCATION ON DISCOVERY CONSUMED PRECIOUS TIME.

The major issues to be divulged on discovery were net worth, class size, and *bona fide* error defenses.  The former two required the deposition of Christine Harbridge, the latter, the deposition of Ronald Sargis.

The deposition of Ms. Harbridge was difficult.  Her counsel interposed objections that were not proper under federal law, and impeded the deposition.  Ms. Harbridge's hodge-podge of financial records were difficult to analyze by the accountant retained by Plaintiff and present at the deposition.  Ultimately, however, net worth was pieced together by the records review by the accountant and general financial data available from other debt collector records.  Class size was a fact that was difficult to obtain voluntarily from Ms. Harbridge, though the numbers were disclosed when settlement negotiations were undertaken.

The deposition of Ronald Sargis, Defendants' compliance attorney, was taken.  This deposition proceeded in a professional manner, unlike the Harbridge deposition.  Plaintiff believed the law and the Sargis deposition melted away any claim to a *bona fide* error defense.

Paper discovery had been served early in the case.  The responses were not helpful as improper objections were made, necessitating a consideration of a motion to compel.  The motion was not made.  Instead, Plaintiff opted to conduct depositions.

### V.  PLAINTIFF'S ATTORNEY'S FEES MUST BE AWARDED FOR THE SUCCESS IN THIS LITIGATION AT HIS MARKET RATE.

This lawsuit began with the filing of a complaint on February 4, 2004.  Your declarant has provided 132.10 hours of legal services, and advanced $192.41 in costs, detailed at Exhibit A. Your applicant has not received any fees on account of his services.  He now asks for a fee of

$56,142.50, based on 132.10 hours, payable at a rate of $425.00 per hour.  The hourly rate is the rate chargeable by your declarant for fee-paying clients.  It is the market rate for an attorney with your declarant's experience.  Filed concurrently in support of this application is the declaration of Mark Chavez and James Sturdevant, two respected attorneys who practice consumer law in the Northern District of California..  In detailing my time, your declarant records the activity at time of the occurrence.  I, thereafter, summarize the activity in greater detail, as detailed at Exhibit A.  I do not charge for short telephone calls or most administrative chores.

I believe the attorney's fee of $56,142.50 and costs of $192.41 requested is fair for the result obtained and the fierce litigation involved in obtaining the result.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief..

Dated: November 28, 2008                           /s/
at Corte Madera, CA                                Irving L. Berg