UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RITA CAMACHO, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br>v.<br><br>BRIDGEPORT FINANCIAL, INC., a California Corporation, and CHRISTINA HARBRIDGE, RAY LEWIS, individuals,<br><br>    Defendants.<br>_____/ | Case No.: C 04- 0478 CRB<br><br>DECLARATION OF JAMES C. STURDEVANT IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF COSTS AND ATTORNEY FEES<br><br>Date:  January 5, 2007<br>Time: 10:00 a.m.<br>Court room No. 8, 19th Floor<br>Honorable Charles R. Breyer |

**DECLARATION OF JAMES C.  STURDEVANT
IN SUPPORT OF
PLAINTIFF'S MOTION FOR AN AWARD OF COSTS AND ATTORNEYS' FEES**

I, James C. Sturdevant, declare as follows:

1. I make this declaration based upon my personal knowledge, and if called upon to do so, could and would testify competently as to the matters stated herein.

2. I am an attorney admitted to practice in the State of California and am a member of the Bar of this Court.  I am the principal in the Sturdevant Law Firm, a professional corporation.  I submit this Declaration in support of Plaintiff's Motion for Award of Costs and Attorney Fees.

<u>Legal Experience and Qualifications</u>

3. I am a graduate of Boston College School of Law where I received my J.D. in 1972, and of Trinity College, in Connecticut, where I received a B.A. in 1969.

4. I have concentrated on litigation throughout my legal career.  From 1972 through May, 1978, I was employed with the Tolland-Windham Legal Assistance Program, Inc., and Connecticut Legal Services, Inc., where I concentrated on significant housing, food and unemployment compensation litigation primarily in federal courts, legislation and administrative advocacy.  From in October, 1978, until May, 1980, I initiated and directed all major litigation

for the San Fernando Valley Neighborhood Legal Services, Inc. in Pacoima, California.  Since 1980, I have concentrated on lender liability, consumer protection class actions, complex employment discrimination cases, and unlawful/unfair business practice cases.

5. In 1980, I formed my own private practice focusing on unfair business practices and civil rights cases.  In total, I have had over 33 years of experience trying and settling class action and other complex cases.  I have represented consumers and low-income and other individuals in consumer class actions, employment discrimination cases, environmental litigation, unfair business practices litigation, and other public interest actions in both state and federal courts.  I have handled the pre-trial, trial, and appellate work for cases in my firm for which I was lead or co-counsel.  Summarized below are examples of recent significant litigation in which I am or have been involved.

6. Co-lead counsel for statewide plaintiff class certified in *Beasley, et al. v. Wells Fargo Bank*, San Francisco Superior Court Case No. 861555.  The class challenged Wells Fargo's practice of imposing late and over-limit charges on its consumer credit card account holders as violative of California's law prohibiting liquidated damages in consumer contracts.  The court awarded attorneys' fees of nearly $2,000,000.00 to plaintiffs.  The Court of Appeal affirmed both judgments.  *Beasley v. Wells Fargo Bank, N.A.* (1991) 235 Cal.App.3d 1383 (merits); *id.*, 235 Cal.App.3d 1407 (fees).

7. Lead counsel for statewide class of Crocker Bank credit card holders challenging the legality of over-limit and late charges.  *Kovitz, et al., v. Crocker National Bank, et al.*, San Francisco Superior Court Case No. 868914.  Settlement provided damages approximating $3,800,000.00, plus interest, to the class.

8. Lead counsel for statewide class of consumer credit card holders in *Hitz v. First Interstate Bank of California*, San Francisco Superior Court Case No. 870897.  The plaintiff class challenged the bank's imposition of late fees-and over-limit penalty charges as unlawful liquidated damages in violation of Civil Code § 1671 (c) and (d).  Plaintiff class awarded more than $13.9 million in damages, which was reduced on appeal.  *Hitz-v. First Interstate Bank* (1995) 38 Cal.App.4th 274, *rev. denied*.

9. Counsel for statewide settlement class of consumer credit card holders in *Andrews v. First Interstate Bank of California*, San Francisco Superior Court Case No. 953575, a follow-up action to *Hitz*. Court approved settlement fund of $1.5 million and class counsel attorneys' fees costs, and expenses in the amount of 30 percent of the settlement fund.

10. Co-lead counsel for statewide certified plaintiff class and a consumer organization in *Ting v. AT&T*, U.S. District Court, Northern District of California, Case No. C 012969 BZ ADR, a class action lawsuit against AT&T on behalf of seven million California consumers. In its landmark ruling, the court found that the mandatory arbitration clause was illegal, unconscionable, and unenforceable. *Ting v. AT&T*, 182 F.Supp.2d 902 (N.D. Cal. 2002). The Ninth Circuit affirmed in most respects in a significant opinion, holding, among other things, that a clause prohibiting class action adjudication was a limitation on remedies and therefore unconscionable under California law. 319 F.3d 1126 (9th Cir.), *cert. denied*, 540 U.S. 811 (2003).

11. Lead counsel for consumers, a consumer organization, and the Consumer Attorneys' of California in *Badie v. Bank of America*, San Francisco Superior Court No. 944916, challenging Bank of America's attempt to impose unilaterally alternative dispute resolution ("ADR") on its checking and credit card account customers. Court of Appeal held that the ADR clause was a hew material term to the agreement which required clear, unmistakable consent by the customer. *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, *rev. denied*.

12. Lead counsel for the plaintiff in *Lopez v. Charles Schwab & Co., Inc.* (2004) 118 Cal.App.4th 1224, 13 Cal.Rptr.3d 544. This case challenged on appeal the trial court's determination to compel arbitration of the plaintiff's consumer claims against Charles Schwab. The appellate court reversed the trial court's order, finding that there was no agreement between plaintiff, who had applied for and had been denied a Charles Schwab account, and Charles Schwab to arbitrate any disputes. The opinion in *Lopez* held that the public policy in favor of arbitration does not apply in cases that involve disputes over the very existence of an agreement to arbitrate.

///

13.     Lead counsel for the plaintiffs in *Yu v. Signet Bank/Virginia, et al.*, Alameda County Superior Court Case No. H-184674-8, a proposed statewide consumer class action alleging that defendant Signet Bank/Virginia engaged in a long-term unlawful business practice. *Yu v. Signet Bank* (1999) 69 Cal.App.4th 1377 held the complaint properly alleged abuse of process for an out-of-state credit card issuer to sue California residents in the municipal court in Richmond, Virginia without obtaining personal jurisdiction and then garnishing wages of California residents through a Virginia office of the California employer. On remand, defendants renewed their litigation strategy, and demurred to the amended complaint on the grounds that the litigation privilege codified in Civil Code § 47(b)(2) and the First Amendment to the U.S. Constitution absolutely sanctioned the distant forum abuse program. They claimed that the. seminal decision in *Barquis v. Merchants Collection Association* (1972) 3 Cal.3d 94, had been vitiated by subsequent decisions of the California Supreme Court, and that the First Amendment created an absolute bar to any judicial relief for claims of abuse of process and violations of California's Unfair Competition Law. In February, 2001, the trial court sustained the demurrer. On appeal, the Court of Appeal reversed judgment based on the sustaining of the demurrer. It held that its opinion in *Yu I* was law of the case with respect to *Barquis* because its conclusions were necessary to the ultimate result. *Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, *rev. denied*. Independently, it held that plaintiffs had demonstrated a probability of success on their underlying claim, as they had presented triable issues of fact on their abuse of process and Unfair Competition Law claims previously. After remand, the case settled for nearly $15 million.

14.     Lead counsel for the certified plaintiff class in *Singleton, et al. v. Regents of the University of California*, Alameda County Superior Court Case No. 807233-1, filed in December 1998. In October 2003, after extensive litigation and discovery, the parties entered into a proposed class settlement. The settlement agreement provides $9.7 million to 3,200 women who worked at Livermore Lab since 1996, plus a 1% raise for approximately 2,500 women who are currently employed at the Lab. That raise amounts to approximately $1.3 million. In addition, the settlement agreement provides comprehensive injunctive relief and monitoring provisions

4

designed to eliminate the Lab's practice of pay and promotion discrimination in the future, as well as attorneys' fees.

15. Co-Lead counsel for the plaintiffs in *The Providian Credit Card Cases*, San Francisco Superior Court, Judicial Council Coordination Proceeding No. 4085, a nationwide consumer class action challenging the unlawful, unfair and deceptive practices of defendants Providian Financial Corporation, Providian Bank, Providian National Bank, and Providian Bancorp Services in connection with advertising and soliciting of credit card holders. The trial court approved a nationwide settlement of $105 million, plus injunctive relief.

16. Lead counsel for plaintiff in *Miller v. Bank of America, et al.*, San Francisco Superior Court Case No. 301917, a statewide class action lawsuit against Bank of America challenging the bank's practice of seizing exempt funds from Social Security direct deposit accounts to satisfy claims it has against the account holders, in violation of the public policy record established in *Kruger v. Wells Fargo Bank* (1974) 11 Cal.3d 352. The San Francisco Superior Court certified the case as a statewide class action consisting of more than 1.1 million customers. The bank's writ petition and petition for reconsideration of the court's 2003 order denying summary judgment based upon federal preemption were denied. After a five-week jury trial in February, 2004, the jury awarded damages exceeding $1.2 billion consisting of more than $75 million in compensatory damages, $1,000 in special statutory damages to each class member under the Consumer Legal Remedies Act because they are elderly and/or disabled and suffered significant emotional or economic damage, and $275,000 to the named plaintiff for emotional distress. The Court of Appeal reversed. __ Cal.Rptr.3d ___, 2006 WL 3353983 (2006). The plaintiff class is seeking review by the California Supreme Court.

17. Lead counsel for a statewide class of Security Pacific credit cardholders who challenged the legality of credit card over-limit and late charges in *McClendon v. Security Pacific National Bank*, Alameda County Superior Court Case No. 613722-5. Settlement, approved by the trial court, provided a settlement fund of $2.6 million.

18. Lead counsel for plaintiff class in *Patterson v. ITT Consumer Financial Corporation, et al.*, San Francisco Superior Court Case No. 936818. Case challenged the

1  defendant finance companies' and their affiliated insurance companies' deceptive and unlawful
2  practices. Defendant's arbitration clause was held unconscionable. *Patterson v. ITT Consumer*
3  *Financial Corp.* (1993) 14 Cal.App.4th 1659, *rev. denied*, *cert. denied*, 510 U.S. 1176 (1994).
4  Settlement of approximately $4 million in monetary benefits to the plaintiffs and consumer class,
5  as well as significant injunctive relief.

         19.     Counsel for plaintiffs and the plaintiff classes in *Genzale, et al. v. Zenzi's Beauty
*College, et al.*, San Francisco Superior Court Case No. 930702, a vocational school fraud case.
After a five-week bench trial in mid-1996, the Honorable Alfred G. Chiantelli awarded the
affected class members $328,119.44, doubled as statutory penalty to $656,238.88, and an award
of attorneys' fees including a 1.5 multiplier.

         20.     My firm served as one of the eight members of the Executive Committee of
plaintiffs' class counsel in all cases subject to coordination commonly referred to as the
"Richmond Toxic Cloud Cases" arising out of the catastrophic release of toxic chemicals of
oleum and sulfuric acid in Richmond on July 26, 1993. *In re GCC Richmond Works Cases*,
Judicial Council Coordination Proceeding No. 2906 (Contra Costa Superior Court). I served as
the Chair of the Discovery Committee, one of the four committees created to organize and
oversee the coordinated complex toxic tort litigation. The parties in this complex case, involving
more than seventy coordinated cases covering some 65,000 individuals, proposed a global
settlement in which GCC and its insurance carriers will pay up to $180,000,000 to the settlement
class for personal injury and punitive damages claims. After a fairness hearing, the settlement
was approved in October, 1995. Distribution to the thousands of claimants is nearly complete.

         21.     My firm and I were co-counsel for the statewide plaintiff class in *Czechowski v.
Tandy Corp.*, Case No. 892821 (San Francisco Superior Court). In that case, plaintiffs, on behalf
of a class, sued Tandy Corporation in state court alleging that Tandy had denied accrued vacation
benefits to its terminated employees in violation of California law. The case was removed to
federal court but plaintiffs successfully obtained a remand to state court. *Czechowski v. Tandy
Corp.*, 731 F.Supp. 406 (N.D. Cal. 1990). In May, 1990, the court certified a class of all persons
who at the time of termination of employment by Tandy Corporation were California residents

and who were not paid, or would not be paid, accrued vacation benefits from October 12, 1983 forward.  In June, 1990, plaintiffs obtained comprehensive summary adjudication on both liability and willfulness issues.  While Tandy's substantial writ petition was pending, on August 9, 1991, the trial court approved a class action settlement providing up to $16,000,000 for a class of approximately 25,000 former Tandy employees.  The court also granted plaintiff's motion for an award of attorneys' fees in excess of 20% of the settlement fund.  This settlement represented a payment to each class member of more than five times the average amount of unpaid vacation benefits.

22.    I was co-counsel for 63 of 91 former pilots of Pan American World Airways who were terminated as pilots on their sixtieth birthdays. *Equal Employment Opportunity Commission v. Pan American Airways, et al.*, Civil No. C-81-3636 RFP (N.D. Cal.).  This representative action under the Age Discrimination in Employment Act, was commenced by the EEOC because Pan American refused to allow the former pilots to down-bid to the position of flight engineer and serve until age seventy.  In 1983, in derogation of the rights of class members, the EEOC offered to enter into an unacceptable settlement of all claims with Pan American.  My firm and our-counsel successfully challenged the fairness of the proposed consent decree under which claimants would have received *either* $4,000 *or* an opportunity to attempt to return to the cockpit as a flight engineer.  In 1985, the United States Supreme Court ruled twice in unanimous opinions against TWA and Western Airlines in similar cases brought by former pilots.  The EEOC and Pan American then entered into a new agreement, providing each pilot with less than $300 for each month of involuntary retirement payable over two years without interest plus an opportunity to become a flight engineer.  Since full back pay is the basic remedy for age discrimination,  the objecting pilots successfully challenged the revised settlement.  The Court rejected the settlement as "totally inadequate" for many years of discrimination finding that Pan American's potential liability exceeded $50 million.  *E.E.O.C. v. Pan American World Airways, Inc.*, 622 F.Supp. 633 (N.D. Cal. 1985), *dismissed on jurisdictional grounds*, 796 F.2d 314 (9th Cir. 1986), *cert. den.*, 479 U.S. 1030 (1987).  The pilots and their counsel were granted "litigating *amici*" status at trial and fully participated as trial counsel with the EEOC.  After a

two-month jury trial in 1987-88, the case was settled on the eve of closing argument for $17,200,000.00 to be paid to 91 and perhaps as many as 105 claimants. The district court approved the settlement as fair and reasonable. The Court of Appeals affirmed. 897 F.2d 1499 (9th Cir.), *cert. den.*, 498 U.S. 815 (1990).

23.     I was counsel for the plaintiff in *Shay v. Merrill Lynch*, Civil No. C-83-5984 MHP (N.D. Cal.) (*Shay I*), and *Shay v. Merrill Lynch*, Case No. 580906-2 (Alameda County Superior Court) (*Shay II*), both filed as statewide class actions alleging violations of securities laws and common law by Merrill Lynch in the sale of single-premium deferred annuities through an insurance subsidiary of the Baldwin-United Corporation. The complaints alleged that Merrill Lynch was a substantial creditor of Baldwin-United but failed to disclose that relationship or the deteriorating financial condition of the insurance subsidiary to its client-purchasers. Compensatory and punitive damages were sought for these acts of fraudulent concealment. The federal action was transferred to New York for coordinated multi-district litigation proceedings, with more than seventy-five (75) other cases involving sales by Merrill Lynch and other major broker-dealers nationwide of the same annuity policies. *In re Baldwin-United Corporation Litigation*, 581 F.Supp. 739 (J.P.M.L. 1984). I served as co-counsel for the nationwide Settlement Class against Merrill Lynch. A global settlement exceeding $183,000,000.00 was judicially approved for nationwide classes of purchasers of the annuity policies. *In re Baldwin-United Corp.*, 607 F.Supp. 1312 (S.D.N.Y.), *aff'd on other grounds*, 770 F.2d 328 (2d Cir. 1985).

24.     I was co-counsel with other attorneys representing a statewide class of inmates confined in administrative segregation units at San Quentin, Folsom, Soledad, and DVI. *Toussaint v. Gomez*, Civil No. C-73-1422 SAW (N.D. Cal.) This litigation challenges as cruel and unusual the barbaric nature of the confinement of thousands of inmates in segregated housing units in 4 major maximum security prisons in California. The Court issued a permanent injunction in 1984 after finding that conditions at San Quentin and Folsom constituted cruel and unusual punishment in violation of the Eighth Amendment. Initial contempt proceedings initiated against various defendants and correctional officers stemming from continued double-

celling at Soledad and DVI were resolved when defendants agreed to a stringent Order in early 1985. In 1991, my firm and I initiated contempt proceedings for relief from systemic violations of the preliminary injunction at Soledad. Following extensive evidentiary submissions, briefing and a hearing, the Court appointed a monitor to investigate and recommend further relief leading to the entry of a permanent injunction involving those two institutions in 1992. Based upon years of on-going substantial compliance, that permanent injunction was dissolved in February, 1997.

25. I was lead counsel for plaintiffs in *Dubose v. Hills*, a consolidated statewide class action, in which the Secretary of HUD was preliminarily enjoined to implement a Congressional tax and utility subsidy program on behalf of low-income tenants in Section 236 housing projects. 405 F.Supp. 1277 (D.Conn. 1975); 420 F.Supp. 399 (D.Conn. 1976); 434 F.Supp. 227 (D.Conn. 1977) (contempt proceedings). We defended HUD appeals in both the U.S. Court of Appeals in the Second Circuit and prepared and filed an extensive *amici curiae* brief with the United States Supreme Court which had agreed to review judgments in favor of tenants in two related, single housing project cases. During the litigation we persuaded Congress to reenact the governing statute and to clarify Congressional intent that the program was mandatory. I headed settlement negotiations with HUD and the Department of Justice which culminated in HUD's payment of $60 million in settlement of claims to be made by eligible tenants nationwide. *Dubose v. Harris*, 82 F.R.D. 582 (D.Conn. 1979). I served on the Committee of Counsel in *Underwood v. Harris*, Civil No. 79-1318 HP (C.D. Cal.), the parallel nationwide case, for five years overseeing the investment and distribution of the settlement fund. More than $45,000,000.00 was distributed to approximately 153,000 eligible low-income tenants nationwide. Thereafter, the undistributed residue of more than $24,000,000.00, including interest earnings on the fund during settlement administration, was returned to HUD for use in future housing subsidy programs.

26. As indicated from the summary of cases set forth above, I have had over thirty years of experience as an attorney trying and settling class action and complex cases. My experience and standing in the fields of appellate law, law and motion, trial work and negotiations are also quite extensive. I have served as lead counsel at numerous trials and evidentiary hearings of complex matters; have had more than thirty appellate arguments before

1  the United States and California appellate courts; and have led the negotiation and settlement, or
2  trial, of many multi-million dollar cases.
3       27.    I was President of the Consumer Attorneys of California in 2004. I served on the
4  Board of Directors of Trial Lawyers for Public Justice from 1978 through this year and was a
5  member of its Executive Committee. I served for many years through last year as a member of
6  the Board of Directors of the San Francisco Trial Lawyers Association. I have been a member of
7  the Board of Directors of Equal Justice Works since 2004. I serve as a member of the Board of
8  Directors of the National Association for Consumer Advocates.
9       28.    I have been contacted by Plaintiff's counsel and have been asked to express my
10 opinion of the reasonableness of the attorneys' fees sought for their work in this case. I have read
11 the Declaration of Rand Bragg In Support of Plaintiff's Motion for An Award of Attorneys' Fees.
12 I have also reviewed the First Amended Complaint and the Settlement Agreement. I am aware
13 that this litigation was a class and collective action brought pursuant to the Fair Debt Collection
14 Practices Act 15 U.S.C. §§ 1692 *et seq*.
15      29.    I am informed that Plaintiff's counsel's 2006 hourly rates are as follows:

| Attorney | Law School Graduation | 2004 Hourly Rate |
|---|---|---|
| O. Randolph Bragg | West Virginia University College of Law, 1973 | $465 |
| Irving L. Berg | Golden Gate University, 1965 | $425 |
| Richard J. Rubin | Columbus School of Law, Catholic University of America, 1975 | $500 |

I have known Rand Bragg for a number of years through our mutual membership in the National Association of Consumer Advocates. He is a frequent lecturer on fair debt collection practice issues. I also have known Dick Rubin for several years through our mutual membership in the National Association of Consumer Advocates. He is a highly sought-after appellate attorney. I am also generally familiar with the abilities and experience of Irv Berg. I know of my own personal knowledge the hourly rates of class action attorneys throughout California and the Bay Area. The $465 per hour rate for Mr. Bragg, $425 per hour rate for Mr. Berg, and $500 per hour rate for Mr. Rubin sought by Plaintiff's counsel in this case are within the range of prevailing

market rates for attorneys of their experience and abilities in class action litigation in the Northern District of California. My own current hourly rate is $510 per hour.

30. In my experience, the ability to litigate complex class actions is highly valued in the legal marketplace. Attorneys who take on this kind of litigation responsibility on behalf of plaintiffs command rates at the high end of the market.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at San Francisco, California this 28th day of November, 2006.

*S/ James C. Sturdevant*
JAMES C. STURDEVANT

11