1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RITA CAMACHO, on behalf of herself and
all others similarly situated,

        Plaintiffs,

  v.

BRIDGEPORT FINANCIAL, INC., et al.,

        Defendants.

_____/

No. C 04-00478 CRB

**ORDER GRANTING MOTION FOR
ATTORNEY'S FEES**

      Now pending before the Court is Plaintiff's supplemental motion for attorney's fees.
After this Court awarded Plaintiff over $70,000 in attorney's fees on May 2, 2007, Plaintiff
successfully appealed the award to the Ninth Circuit Court of Appeals.  The Ninth Circuit
vacated the Court's decision and directed the Court to recalculate a reasonable fee award
"using the 'lodestar' method."  Camacho v. Bridgeport Fin., 523 F.3d 973, 978 (9th Cir.
2008) (quoting Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (per
curiam)).  After a thorough review of the parties' submissions, the Court concludes that
faithful application of the lodestar method supports an attorney's fee award of $141,935.00
plus interest, in addition to $6,809.36 in costs.

///

United States District Court
For the Northern District of California

**BACKGROUND**

Plaintiff brought this action against Defendant for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p, arguing that Defendant illegally required debtors to submit their disputes regarding debt collection in writing. Plaintiff prevailed on her claim in this Court, and again in the Ninth Circuit when Defendant appealed.  See Camacho v. Bridgeport Fin., 430 F.3d 1078 (9th Cir. 2005).  The parties subsequently entered into a classwide settlement, which the Court approved on November 17, 2006.  The settlement compelled Defendant to pay Plaintiff $1,000 in damages – the maximum amount permitted for an individual plaintiff under the FDCPA, see 15 U.S.C. § 1692k(a)(2)(A) – and resolved the class claims by requiring Defendant to pay the maximum authorized by statute – 1% of Defendant's net worth or $341.50 – in the form of a cy pres award to Legal Services of Northern California for use in consumer education or representation.

As the prevailing party, Plaintiff sought attorney's fees pursuant to § 1692k(a)(3), which authorizes a grant of reasonable attorney's fees and costs "in the case of any [FDCPA] successful action."  In its Second Amended Order on May 2, 2007, this Court awarded Plaintiff's attorneys $6,809.36 in costs and $70,260 in fees.[1]  The Court arrived at its fee award after finding that Plaintiff's requested hourly rates were excessive and that "numerous other courts" had more properly concluded that $200 was a reasonable rate for representation of a plaintiff in a case under the FDCPA.

Plaintiff appealed to the Ninth Circuit, which vacated the award on the ground that this Court "erred by not identifying the relevant community, and by not explaining what was the prevailing hourly rate in that community for similar services by lawyers of reasonably comparable skill, experience and reputation, as well as by awarding a 'flat award' of $500 for fees-on-fees."  Camacho, 523 F.3d at 979.  On remand, Plaintiff's attorneys seek fees at hourly rates ranging from $425-550.  Defendant opposes the request, contending that an

---

[1] The fees award mistakenly excluded $1,610 in fees for work conducted by a law clerk and a paralegal.  See Camacho, 523 F.3d at 983.  The Court intended to award $71,870 in total fees.

1  award based upon hourly rates of $200-250 is justified in light of the non-complex legal

2  services provided by Plaintiff's counsel.

3  **LEGAL STANDARD**

4  Although litigants in the United States generally pay their own attorney's fees,

5  Congress has legislated that parties who prevail in actions brought under the FDCPA may

6  recover reasonable attorney's fees and costs from the opposing side.  Here, Defendant agreed

7  to pay reasonable and necessary attorney's fees and costs pursuant to the parties' settlement

8  agreement.  See id. at 978.  Fees may be awarded pursuant to settlement just as they may be

9  awarded pursuant to judgment.  See Friend v. Kolodzieczak, 72 F.3d 1386, 1391 (9th Cir.

10  1995).

11  To calculate attorney's fees awarded under § 1692k, district courts must utilize the

12  lodestar method.  See Camacho, 523 F.3d at 978.  "The 'lodestar' is calculated by

13  multiplying the number of hours the prevailing party reasonably expended on the litigation

14  by a reasonable hourly rate."  Ferland, 244 F.3d at 1149 n. 4 (citation and internal quotation

15  marks omitted).  The party seeking fees bears the burden of documenting the hours expended

16  in the litigation and must submit evidence supporting those hours and the rates claimed.  See

17  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  In determining the appropriate lodestar

18  amount, the court may exclude from the fee request any hours that are "excessive, redundant,

19  or otherwise unnecessary."  Id. at 434.  In addition to setting the number of hours, the court

20  must also determine a reasonable hourly rate, "considering the experience, skill, and

21  reputation of the attorney requesting fees."  Chalmers v. City of Los Angeles, 796 F.2d 1205,

22  1210 (9th Cir. 1986).

23  In rare and exceptional cases, the court may adjust the lodestar upward or downward

24  using a multiplier based on facts not subsumed in the initial lodestar calculation. See Welch

25  v. Metropolitan Life Ins. Co., 480 F.3d 942, 946 (9th Cir. 2007).  These factors include, inter

26  alia, the "undesirability" of the case, the preclusion of employment by the attorney due to

27  acceptance of the case, and the nature and length of the professional relationship with the

28  client.  See Van Gerwen v. Guar. Mut. Life Co., 214 F.3d 1041, 1045 n.2 (9th Cir. 2000).

**United States District Court**
For the Northern District of California

1

**DISCUSSION**

2

I. Reasonable Hourly Rate

3

To determine a reasonable hourly rate for the work performed by Plaintiff's counsel,

4

the Court must look to the "rate prevailing in the community for similar work performed by

5

attorneys of comparable skill, experience, and reputation." Barjon v. Dalton, 132 F.3d 496,

6

502 (9th Cir. 1997) (internal quotation marks omitted).  For purposes of Plaintiff's fee

7

motion, the relevant "community" is the Northern District of California.  See Camacho, 523

8

F.3d at 979.

9

 "[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to

10

the attorney's own affidavits – that the requested rates are in line with those prevailing in the

11

community for similar services by lawyers of reasonably comparable skill, experience and

12

reputation." Blum, 465 U.S. at 895 n. 11.  Here,  Plaintiff submitted declarations from all

13

four fee applicants as well as from two other attorneys in support of her argument that the

14

requested hourly rates – $425 per hour for Mr. Berg, $465 an hour for Mr. Bragg, $500 for

15

Mr. Rubin, and $550 for Mr. Pearl – are reasonable.  Furthermore, Plaintiff cited to several

16

recently-litigated cases in the Northern District of California where her attorneys' hourly

17

rates were found to be reasonable.  Plaintiff also cited to several non-FDCPA cases from the

18

Northern District of California where the reasonable hourly rate determinations were found

19

to be in the $325 to $700 range.  For the most part, Plaintiff's evidentiary submission

20

supports the conclusion that an award of fees in the range of $325-500 per hour is reasonable

21

for attorneys of like skill and experience.

22

However, "declarations filed by the fee applicant do not conclusively establish the

23

prevailing market rate[. T]he party opposing the fee application has a burden of rebuttal that

24

requires submission of evidence to the district court challenging the accuracy and

25

reasonableness of the facts asserted by the prevailing party in its submitted affidavits."

26

Camacho, 430 F.3d at 980 (internal citations omitted).  In support of its opposition motion,

27

Bridgeport Financial submitted declarations from its own attorney and another attorney in a

28

different case, in support of its argument that (1) the rates requested by Plaintiff's attorneys

4

1  do not reflect the prevailing market rates and that the prevailing market rate for the services

2  provided by Plaintiff's three attorneys is actually in the $200 to $250 range; (2) that this case

3  is simple and involved non-complex issues of law and fact that did not justify the rates

4  requested; and (3) that Plaintiff's "limited success" in this case does not justify the rates

5  requested.

6          The Court concludes that neither party has persuasively justified its requested rate,

7  and that a reasonable rate falls somewhere in the middle of the parties' positions.  With

8  respect to Bridgeport Financial, the Court finds that it relies primarily on inapposite case law.

9  Although Bridgeport Financial cites several cases in the Northern District where the court set

10 rates in the $200 to $250 range, these cases are distinguishable or may be invalid in light of

11 the Ninth's Circuit's most recent decision in <u>Camacho</u>.  For example, <u>Lea v. Cypress</u>

12 <u>Collections</u>, 2007 WL 988184, at *1-2 (N.D. Cal Apr. 2, 2007), was much simpler than the

13 case at hand.  There, the court found that the action was "a relatively simple FDCPA case"

14 with no dispositive motion, and thus required no "sophisticated knowledge of FDCPA."  <u>Id.</u>

15 at *2.  Similarly, in <u>Abad v. Williams, Cohen & Gray</u>, 2007 WL 1839914, at *1 (N.D. Cal.

16 June 26, 2007), no dispositive motion practice occurred; in fact, the case settled only five

17 months after the complaint was filed.  In <u>Antiel v. G.C.S. Credit Sys. Inc.</u>, slip. op., case no.

18 C-05-04604 RMW (N.D. Cal. Mar. 17, 2006), the court noted that the "case was relatively

19 simple" because "all [plaintiff] did was formulate a complaint and accept an offer of

20 judgment under Rule 68 before bringing this instant motion for attorney's fees."  <u>Id</u>. at 5.

21         The cases above are in stark contrast to this case, which was certified as a class action

22 with more than 7,000 members and involved an issue of first impression in this Circuit:

23 whether collection agencies may limit consumers to disputing their debts only in writing.

24 Plaintiff successfully prevailed on that issue, after extensive briefing before this Court and

25 the Ninth Circuit.

26         Bridgeport Financial also relies on cases that are distinguishable because, unlike here,

27 the fee requests were largely unopposed.  In <u>Breon v. Capital Recovery Associates, Inc</u>., slip

28 op., case no. C-05-00766 JW (N.D. Cal. Nov. 8, 2005), and <u>Montez v. Capital Recovery</u>

**United States District Court**
For the Northern District of California

1    <u>Associates, Inc.</u>, slip op., case no. C-05-01207 JW (N.D. Cal. Nov 8, 2005), the judge noted

2    that "[a]ll Plaintiff did [] was formulate the complaint, obtain an entry of default, and

3    immediately thereafter, file an unopposed motion for judgment."  <u>Breon</u>, C-05-00766 at 4;

4    <u>Montez</u>, C-05-01207 at 4.  Cases involving unopposed fee motions provide an unreliable

5    gauge of reasonable rates because "the court might simply approve a request for fees without

6    adequate inquiry or comment."  <u>In re Quantum Health Res., Inc.</u>,  962 F. Supp. 1254, 1256

7    (C.D. Cal. 1997).

8         Bridgeport Financial also cites <u>Johnson v. Credit International, Inc.</u>, 2005 WL

9    2401890, *4 (N.D. Cal. July 28, 2005).  However, the court in <u>Johnson</u> relied on cases

10   outside of the Northern District of California, which the Ninth Circuit held in <u>Camacho</u> to be

11   erroneous.  Finally, Bridgeport Financial relies on two cases where the court used Census

12   Bureau data to find the prevailing market rate.  These cases, <u>Baerthlein v. Electronic Data</u>

13   <u>Systems Corp.</u>, No. C-05-00196 VRW, 2005 WL 818381, at *5 (N.D. Cal. Apr. 7, 2005),

14   and <u>Wingate v. South San Francisco Scavenger Co.</u>, slip op., case no. C-01-4334 VRM (N.D.

15   Cal. March 11, 2003), utilized Judge Walker's fee calculation method from <u>Yahoo! Inc. v.</u>

16   <u>Net Games, Inc.</u>, 329 F. Supp. 2d 1179, 1183 (N.D. Cal. 2004).  The <u>Yahoo!</u> methodology

17   employs Bureau of Labor Statistics data to determine the average market rate for attorneys in

18   the San Francisco Bay Area.  However, in light of the Ninth Circuit's decision in Camacho

19   II, this Court declines to apply the <u>Yahoo!</u> method and instead uses the legal standard

20   articulated by the Ninth Circuit – that is, determining a reasonable hourly rate by analyzing

21   the prevailing rates in the Northern District of California for similar services by lawyers of

22   comparable skill, experience, and reputation.  Thus, the Court does not find Defendant's

23   reliance on cases awarding $200-250 persuasive under the circumstances.

24        With respect to Plaintiff's position, the Court is reluctant to award the rate requested

25   in light of the "results obtained."  <u>See</u> <u>Van Gerwen</u>, 214 F.3d at 1045 n.2 (citing <u>Blum v.</u>

26   <u>Stenson</u>, 465 U.S. 886, 898-901 (1984)).  Although Plaintiff's victory in prevailing on an

27   unsettled issue of FDCPA law is not to be discounted, the Court must consider the

28

United States District Court
For the Northern District of California

1  significance of Plaintiff's limited financial recovery.[2]  Through settlement, Plaintiff obtained

2  just $1,000 on her own behalf and $341.50 for a <u>cy pres</u> fund.  It is unsettling, to say the

3  least, that Plaintiff's counsel – who prosecuted an action that they must have known would

4  allow for de minimus financial relief – now seek an award that dwarfs damages by a factor of

5  almost 200.  The tail is not just wagging the dog, but whipping it about violently.  It may be,

6  as Plaintiff argues, that the imbalance between damages and fees results from Congressional

7  design.  Regardless, the Court is entitled to take Plaintiff's exceptionally-limited success into

8  account in setting a reasonable hourly rate.  <u>See</u> <u>Sorenson v. Mink</u>, 239 F.3d 1140, 1147 (9th

9  Cir. 2001) (holding that a district court may reduce a fee award on the basis of limited

10  success).

11         In light of the evidence proffered by the parties, in combination with the Court's view

12  of the results obtained by Plaintiff, the Court finds that a reasonable hourly rate falls

13  somewhere in between the rates proposed by the parties.  Accordingly, the Court will award

14  attorney's fees at the rate of $375 per hour for Plaintiff's counsel, and at the rates requested

15  by Plaintiff for the associate, clerk and paralegal who performed work on the matter.

16         <u>II. Reasonable Hours</u>

17         This Court previously determined that the hours spent litigating the merits of this case

18  were reasonable.  Defendant has proffered no new evidence to convince the Court that its

19  prior determination was incorrect.  Accordingly, the Court reaffirms that Plaintiff's counsel

20  are entitled to compensation for the following time spent on litigating the merits: 120.9 hours

21  by Mr. Berg, 155.7 hours by Mr. Bragg, and 58.7 hours by Mr. Rubin.[3]  In addition, the

22  Court finds that Mr. Bragg is entitled to an award of $1,610 for the hours billed by his law

23

24  [2] This case is distinguishable from cases such as <u>Friend v. Kolodzieczak</u>, 72 F.3d 1386,
1390 (9th Cir. 1995) – where the plaintiffs failure to obtain monetary relief was "of no import,
25  since . . . the primary goal of the plaintiffs . . . was to obtain injunctive relief" – for the simple
reason that Camacho obtained no injunctive relief for class members.

26  [3] Mr. Bragg submitted an original declaration requesting fees for 156.5 hours.  As the
Ninth Circuit recognized, the request included time spent by Mr. Bragg on the merits
27  (approximately 155.7 hours) and time spent litigating fees (approximately 0.8 hours).  For the
reasons set forth <u>infra.</u>, the Court finds that those hours spent by Mr. Bragg on litigating fees –
28  including those hours identified in Mr. Bragg's first declaration – must be reduced.  For the same
reasons, the 11.2 hours spent by Mr. Berg on litigating fees must also be reduced.

**United States District Court**
For the Northern District of California

1   clerk (13 hours at $115) and his paralegal (1 hour at $115), which this Court previously

2   found to be reasonable.

3        In addition to time spent on the merits, Plaintiff seeks fees for those hours spent

4   litigating the issue of fees.  The "time spent in establishing the entitlement to and amount of

5   the fee is compensable."  <u>Camacho</u>, 523 F.3d at 981 (citing <u>In re Nucorp Energy, Inc.</u>, 764

6   F.2d 655, 659-660 (9th Cir.1985)).  A calculation of fees-on-fees also uses the lodestar

7   method, which requires multiplying "the number of hours the prevailing party reasonable

8   expended on the litigation by a reasonable hourly rate."  <u>Camacho</u>, 523 F.3d at 978.

9        Here, in addition to the time spent on litigating the merits, Mr. Bragg requested fees

10  for 17 hours of his time and 24.2 hours of his associate's time for the preparation of the

11  <u>original</u> fee motion.  Mr. Berg spent approximately 11.2 hours preparing his fee motion, and

12  Mr. Rubin spent 1.5 hours preparing his application.  Bridgeport opposes the request for fees-

13  on-fees primarily on the ground that the work preparing the fee motion involved only

14  "cutting and pasting."  Def. Opp. at 13.  It is true that Plaintiff's attorneys are exceedingly

15  well-versed on this issue and had prepared similar motions in the past.  Accordingly, this

16  Court finds that a reduction of hours is appropriate; Mr. Bragg is entitled to fees for 10 hours

17  of his time and 12 hours of his associate's time, and Mr. Berg is entitled to compensation for

18  6 hours of his time.  <u>See Welch</u>, 480 F.3d at 950 ("A reduction in hours is appropriate if the

19  court reasonably concludes that preparation of a motion demanded little of counsel's time.")

20  (internal quotation and citation omitted).

21       Plaintiff also seeks fees for the time spent litigating the issue of fees after remand

22  from the Ninth Circuit.  The Ninth Circuit has held that "Plaintiffs are entitled to

23  compensation for all time reasonably spent defending this court's original orders awarding

24  fees and costs," including the time spent on the case after remand.  <u>Friend</u>, 72 F.3d at 1391.

25  However, this Court finds that the hours requested by Mr. Pearl for the supplemental fee

26  motion – 17.7 hours on the opening brief and 13.7 hours on the reply – are excessive in light

27  of: (1) Mr. Pearl's breadth experience in these types of cases; and (2) the fact that many of

28  the issues briefed by Mr. Pearl had already received attention in the first round of briefing.

1   This Court finds that only 15 hours can be deemed reasonable and thus compensable for time

2   spent on post-appeal matters.

3       III. Calculation of Fees & Costs

4       Pursuant to the preceding analysis, the Court will award fees to the Plaintiff as

5   follows:

6       Irving L. Berg        126.9 hours   x    $375/hour   =    $47,587.50

7       O. Randolph Bragg   165.7 hours   x    $375/hour   =    $62,137.50

8       Richard J. Rubin    60.2 hours    x    $375/hour   =    $22,575.00

9       Richard M. Pearl    15 hours      x    $375/hour   =    $5,625.00

10      Craig M. Shapiro    12 hours      x    $200/hour   =    $2,400.00

11      Craig M. Shapiro    13 hours      x    $115/hour   =    $1,495.00

12      Shannon Carter      1 hour        x    $115/hour   =    $115.00

13      In addition, the Court reaffirms its prior determination that Plaintiff is entitled to

14  $6,809.36 in costs.

15      IV. Interest

16      Interest on an award for attorney's fees is mandatory once a judgment is obtained,

17  even if the award is later reduced on appeal.  See Perkins v. Standard Oil Co. of California,

18  487 F.2d 672, 676 (9th Cir. 1973).  Interest is to be calculated from the date of the initial

19  entry of judgement.  Id.

20      Bridgeport Financial argues that Federal Rule of Appellate Procedure 37(b) precludes

21  an award of interest.  See Def. Opp. at 14.  However, Rule 37 only applies if the appellate

22  court "modifies or reverses a judgment with a direction that a money judgment be entered in

23  the district court."  Fed. R. App. Proc. 37(b) (emphasis added).  Where, as here, the court of

24  appeals remands to the district court to determine the amount of a damages award, then the

25  mandate does not direct the entry of a money judgment and Rule 37(b) is not implicated, and

26  the district court is free to award post-judgment interest.  See Planned Parenthood v. Am.

27  Coalition of Life Activities, 518 F.3d 1013, 1018-19 (9th Cir. 2008).  Accordingly, Plaintiff

28

United States District Court
For the Northern District of California

is entitled to the amount of interest requested – 5.10% – from January 24, 2007 to the date of

this Order.[4]

   **IT IS SO ORDERED.**


Dated: July 24, 2008                            _____
                                                CHARLES  R. BREYER
                                                UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

---

   [4] Plaintiff seeks interest only on the amount that this Court should have awarded as part
of the original award.  Thus, interest is not owed on the amount awarded for fees earned post-
remand.